**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-01599-NYW

JOSE LUIS QUEZADA-ESTRADA,

      Petitioner,

v.

TODD LYONS, in his official capacity,
GEORGE VALDEZ, in his official capacity,
MARKWAYNE MULLIN, in his official capacity,
U.S. DEPARTMENT OF HOMELAND SECURITY,
TODD BLANCHE, in his official capacity,
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, and
JUAN BALTAZAR, in his official capacity,

      Respondents.

_____

**MEMORANDUM OPINION AND ORDER**

_____

This matter is before the Court on the Petition for Writ of Habeas Corpus

("Petition"). [Doc. 1]. Respondents[1] have responded in opposition. [Doc. 7]. Petitioner

---

[1] The Court agrees with Respondents that the Department of Homeland Security and the Executive Office for Immigration Review are not proper Respondents to this action. [Doc. 7 at 1 n.1]. The Supreme Court has explained that "[t]here is generally only one proper respondent to a given prisoner's habeas petition. This custodian, moreover, is 'the person' with the ability to produce the prisoner's body before the habeas court." *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004); *see also id.* at 435 ("The writ of habeas corpus acts upon the person who holds [the detainee] in what is alleged to be unlawful custody." (quotation omitted)). To be sure, *Padilla* left open the question of which "person" may be considered the custodian of a noncitizen in immigration detention. *See id.* at 435 n. 8. But Respondents only challenge the inclusion of federal agencies as parties to this case. With respect to this limited challenge, *Padilla* is clear that where, as here, a detainee attacks his present physical confinement, the habeas action must be directed at a "person," not a federal agency. *See, e.g., Wallace v. Fed. Bureau of Prisons*, No. 7:12-cv-00258, 2012 WL 6600348, at *2 n.3 (W.D. Va. Dec. 18, 2012) ("Neither the [Federal

has not filed a reply, and the time to do so has elapsed.  For the reasons set forth below, the Petition is **GRANTED in part**.

### BACKGROUND

Petitioner Jose Luis Quezada-Estrada ("Petitioner" or "Mr. Quezada-Estrada") is a citizen of Guatemala.  [Doc. 1 at 4 ¶ 1].  He has resided in the United States for more than 15 years.  [*Id.*].  On August 16, 2025, he was arrested by U.S. Immigration and Customs Enforcement ("ICE").  [*Id.* at 5 ¶ 7].  Although Petitioner's Record of Deportable/Inadmissible Alien ("Form I-213") indicates that ICE served him with a Warrant for Arrest of Alien ("Form I-200") and other documents upon his arrest, [Doc. 1-3 at 8], he contends that this "does not appear to be true," [Doc. 1 at 5 ¶ 7].  Rather, the record indicates that Petitioner's Form I-200 and Notice to Appear ("NTA") for removal proceedings were issued on September 10, 2025.  [*Id.* at 5 ¶ 8; Doc. 1-3 at 11–15].  Respondents do not dispute this timeline of events.  *See* [Doc. 7].

ICE presently detains Mr. Quezada-Estrada at a detention center in this District.  [Doc. 1 at 3 ¶ 1].  Respondents purport to detain him under 8 U.S.C. § 1225(b)(2)(A).  [Doc. 7 at 2–4].  Petitioner disputes Respondents' interpretation of § 1225(b)(2)(A) and contends that he is actually detained under 8 U.S.C. § 1226(a), which would entitle him to a bond hearing.  [Doc. 1 at 14–24].  He also argues, among other things, that his detention based on a warrantless arrest was unlawful from the start.  [*Id.* at 11–14].

---

Bureau of Prisons] nor the United States of America is a proper respondent to a habeas corpus petition." (citing *Padilla*, 542 U.S. 426)).  Accordingly, the Clerk of Court is **DIRECTED** to terminate the Department of Homeland Security and the Executive Office for Immigration Review as Respondents in this action.

Mr. Quezada-Estrada asserts four claims challenging his detention. First, he argues that his detention violates the Administrative Procedure Act ("Count One"). [*Id.* at 32–33]. Second, he argues that his detention violates § 1226(a) itself ("Count Two"). [*Id.* at 33–34]. Third, he contends that his warrantless arrest and detention without a bond hearing violates his due process rights under the Fifth Amendment ("Count Three"). [*Id.* at 34–35]. Fourth, and relatedly, he asserts that his detention has become unconstitutionally prolonged in violation of the Due Process Clause ("Count Four"). [*Id.* at 35].

Mr. Quezada-Estrada seeks, among other things, a writ of habeas corpus ordering that he either be released from custody or granted a bond hearing. [*Id.* at 36]. If the Court orders a bond hearing, he asks that the Government bear the burden of justifying detention by clear and convincing evidence. [*Id.*].

This matter is fully briefed and ripe for disposition. No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

**LEGAL STANDARD**

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484

3

(1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

Petitioner's claims primarily turn on whether Respondents may detain him pursuant to § 1225(b)(2)(A), such that he is not entitled to the procedural protections afforded by § 1226(a).  The Court summarizes the statutory framework before turning to the Parties' arguments.

## I.  Statutory Framework

Sections 1225 and 1226 govern detention of noncitizens prior to a final order of removal.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Section 1226 "sets forth 'the default rule' for detaining noncitizens 'already present in the United States.'"  *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 303).  This section provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  Pending removal proceedings, the Attorney General "*may* continue to detain" or "*may* release" the noncitizen.  § 1226(a)(1)–(2).  Thus, § 1226 permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings, subject to certain exceptions not applicable here.  *Jennings*, 583 U.S. at 303.  This establishes a discretionary framework for the detention of noncitizens pending removal proceedings.

Section 1225(b) "supplement[s] § 1226's detention scheme."  *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v.*

*Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)).  Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission." *Jennings*, 583 U.S. at 297.  This section provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" pending removal proceedings.  8 U.S.C. § 1225(b)(2)(A) (emphasis added).[2]  Under § 1225(a)(1), an "applicant for admission" is

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters).

Absent an exception for urgent humanitarian reasons not implicated in this case, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing."  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings*, 583 U.S. at 297).

## II.    Count Two:  Statutory Claim Under § 1226(a)

### A.    Basis for Detention

The Court's analysis begins with the proper statutory basis for Petitioner's detention.  Respondents argue that § 1225(b)(2)(A) applies and requires Petitioner's

---

[2] Under 8 U.S.C. § 1225(b)(1), "certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum."  *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. Oct. 3, 2025), *appeal docketed*, No. 25-2152 (1st Cir. Dec. 3, 2025); *see also* 8 U.S.C. § 1225(b)(1)(A)(i) (directing an immigration officer to "order [a person deemed inadmissible] removed from the United States without further hearing or review unless [the person] indicates either an intention to apply for asylum . . . or a fear of persecution").  Respondents do not argue that Petitioner is detained pursuant to § 1225(b)(1), *see* [Doc. 11], so the Court does not substantively address detention under this subsection.

detention, so he is not entitled to a bond hearing.  *See* [Doc. 7].  This Court, following the clear weight of persuasive authority, has already rejected Respondents' position.  *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *5 (D. Colo. Oct. 22, 2025) ("[F]ederal courts have overwhelmingly rejected Respondents' 'broad interpretation of section 1225(b)(2).'" (collecting cases)).[3]

In *Loa Caballero*, this Court reviewed a similar habeas petition filed by a noncitizen who was detained without a bond hearing based on the Government's assertion that § 1225 mandated his detention.  *See id*. at *1.  The Court disagreed, emphasizing that § 1225(b)(2)(A) only provides for mandatory detention of noncitizens "seeking admission" to the country.  *Id.* at *6.  "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States."  *Id.*  Thus, noncitizens who are merely "present"—and have been for years without obtaining legal status—are not "seeking admission" under § 1225(b)(2)(A).  *Id.* (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025)).  Interpreting § 1225(b)(2)(A) to mandate detention for all "applicants for admission" would

---

[3] In addition to this Court's ruling in *Loa Caballero*, nearly all of the other judges in this District have concluded that § 1225(b)(2)(A) does not apply to noncitizens similarly situated to Petitioner, who have been present in the country for some time and are not actively "seeking admission."  *See, e.g.*, *Mendoza Gutierrez v. Baltasar*, No. 25-cv-02720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2024) (Rodriguez, J.), *appeal docketed*, No. 25-1460 (10th Cir. Dec. 16, 2025); *Moya Pineda v. Baltasar*, No. 25-cv-02955-GPG, 2025 WL 3516291 (D. Colo. Oct. 20, 2025) (Gallagher, J.); *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025) (Sweeney, J.); *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607 (D. Colo. Oct. 31, 2025) (Jackson, J.); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019 (D. Colo. Dec. 18, 2025) (Brimmer, J.); *Aleman Hernandez v. Baltazar*, No. 25-cv-03688-SKC-SBP, 2025 WL 3718159 (D. Colo. Dec. 23, 2025) (Crews, J.); *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148 (D. Colo. 2026) (Martinez, J.).  *But see Singh v. Blanche*, No. 26-cv-01076-DDD-TPO, 2026 WL 1282828 (D. Colo. May 11, 2026) (Domenico, C.J.).

render the "seeking admission" language superfluous. *Id.* at \*7. The Court concluded that both the plain text of § 1225 and applicable canons of statutory interpretation demonstrated that the petitioner in *Loa Caballero* was detained under § 1226, not § 1225. *See id.* at \*5–8. The Court has since reaffirmed its ruling in *Loa Caballero* in several other similar habeas cases. *See, e.g.*, *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227 (D. Colo. Jan. 6, 2026); *Garcia Bautista v. Noem*, No. 26-cv-00272-NYW, 2026 WL 532427, at \*4 (D. Colo. Feb. 26, 2026).

Respondents acknowledge the issue presented in this case "is not materially different" than *Loa Cabellero*, *see* [Doc. 7 at 2–3], and provide no persuasive reason for the Court to depart from the conclusion it reached in that case. Nor has the Tenth Circuit yet addressed the issue.[4] And although Respondents preserve their arguments to the contrary, they concede that the Court's ruling in *Loa Caballero* will lead the Court to the same conclusion here. [*Id.* at 4].

Accordingly, as in *Loa Caballero* and *Briales-Zuniga*, the Court concludes that § 1225(b)(2)(A) does not authorize Respondents' detention of Petitioner. The "default rule" of discretionary detention under § 1226(a) therefore applies. *See, e.g.*, *Quispe-*

---

[4] The courts of appeals to consider Respondents' interpretation of § 1225(b)(2)(A) have split. *Compare Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026) (rejecting Respondents' interpretation), *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, --- F.4th ----, 2026 WL 1243395 (11th Cir. May 6, 2026) (same), *Lopez-Campos v. Raycraft*, --- F.4th ----, 2026 WL 1283891 (6th Cir. May 11, 2026) (same), *and Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (concluding at preliminary stage that DHS was unlikely to succeed on the merits of its argument), *with Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) (affirming Respondents' interpretation), *and Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (same). Given that the arguments on both sides are now well-worn, the Court need not go further than to note that the Fifth and Eighth Circuits' decisions, although thorough, do not bind or persuade this Court to reconsider its analysis of this issue. *See Garcia Bautista*, 2026 WL 532427, at \*3 n.3.

*Ardiles*, 2025 WL 2783800, at *5, *7.

**B.      Lawfulness of Arrest and Appropriate Remedy**

This Court has repeatedly held that a bond hearing before an immigration judge is the proper habeas remedy for noncitizens who, like Petitioner, are detained under § 1226(a) but were erroneously denied a bond hearing. *See, e.g.*, *Briales-Zuniga*, 2026 WL 35227, at *4; *Garcia Bautista*, 2026 WL 532427, at *4. Petitioner asks the Court to depart from that rule. Because his arrest and initial detention occurred without a warrant, he argues, he should be immediately released. *See* [Doc. 1 at 11–14].

As Petitioner points out, § 1226(a) authorizes arrest and detention only "[o]n a warrant issued by the Attorney General." Thus, "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025); *accord, e.g.*, *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025); *Ahmed M. v. Bondi*, No. 25-cv-04711-ECT-SGE, 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026). This is consistent with DHS regulations permitting immigration officers to "arrest[] and take[] into custody" individuals suspected of violating the immigration laws *after* the officers have obtained a warrant and an NTA. *See* 8 C.F.R. §§ 236.1(b), 1236.1(b); *see also Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025) (observing that ICE officers "possess extremely broad authority" to arrest individuals subject to removal proceedings once a warrant and NTA have issued), *appeal docketed sub nom.*, *Ramirez Ovando v. Mullin*, No. 26-1027 (10th Cir. Jan. 26, 2026).

Without a warrant, however, the Government's authority to make immigration arrests is "more limited." *Ramirez Ovando*, 810 F. Supp. 3d at 1216 (quoting *Arizona v. United States*, 567 U.S. 387, 408 (2012)). An immigration officer may make a warrantless arrest "if he has reason to believe" that a noncitizen is unlawfully present in the United States "and is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). Courts have interpreted the "reason to believe" language as equivalent to the constitutional probable cause standard and requiring a particularized finding of probable cause that the noncitizen is likely to escape. *See Ramirez Ovando*, 810 F. Supp. 3d at 1216–17 (citing *Roa-Rodriguez v. United States*, 410 F.2d 1206, 1209 (10th Cir. 1969)) (further citations omitted); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30–31 (D.D.C. 2025).[5] Once an officer makes a warrantless arrest, the Government generally must make a custody determination within 48 hours and decide "whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued." 8 C.F.R. § 287.3(d).

The record before the Court demonstrates that the Government did not comply with these requirements when arresting and detaining Petitioner. Petitioner's Form I-213 states that ICE officers served Petitioner with an "I-200 [i.e., a warrant], I-862 [i.e., an NTA], and all other pertinent paperwork" upon his arrest. [Doc. 1-3 at 8]. But that statement is contradicted by the Form I-200 and NTA themselves. Petitioner's warrant

---

[5] In the context of pretrial detention under the Bail Reform Act, the Tenth Circuit has observed that a defendant cannot be detained based on a risk of flight due solely to their status as a removable non-citizen. *See United States v. Sanchez-Rivas*, 752 F. App'x 601, 604 (10th Cir. 2018) (citing *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017)). This is equally applicable in this context, because otherwise, the two requirements of 8 U.S.C. § 1357(a)(2) would collapse into one.

and NTA indicate that they were served on Petitioner on September 10, 2025, nearly a month after his arrest.  *See* [*id.* at 11–15].  Nor is there any indication that the arresting officers made a probable cause determination under § 1357(a).  If anything, the Form I-213's reference to a warrant suggests that the officers believed a probable cause determination was unnecessary.  Even if probable cause did exist, the nearly monthlong delay between the arrest and warrant violates the 48-hour deadline imposed by DHS regulations.  8 C.F.R. § 287.3(d); *see also, e.g.*, *Makuiza v. Wesling*, --- F. Supp. 3d ----, 2026 WL 252400, at *4 (D. Me. Jan. 30, 2026) (ordering release where respondents arrested petitioner without a warrant and failed to procure one within 48 hours).  The Government does not dispute any of this.  *See* [Doc. 7].

The fact that Respondents eventually obtained a warrant weeks after detaining Petitioner does not alter this Court's analysis.  Respondents do not address this issue in their response brief, let alone provide any authority suggesting that the Government may cure an unlawful detention by obtaining untimely warrant.  As explained, the applicable statutory and regulatory provisions are clear that a warrant is a mandatory predicate for commencing detention under § 1226(a).  "If the alien [detained under § 1226(a)] has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion to detain or release 'the arrested alien' are likewise not triggered."  *Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023); *see also Jennings*, 583 U.S. at 302 ("[Section 1226(a)] authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest.").  Fundamentally, Respondents may not detain first, and justify later.  *See Gopie v. Lyons*, No. 25-cv-05229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) ("ICE does not have free-ranging ability to arrest and detain

10

people, and figure out the reasons later, like they apparently did here."); *Vang v. Bondi*, No. 26-cv-01381-JMG, 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026) ("The government detained the petitioner first, and asked questions later. That's not how this works."). To hold otherwise would simply turn a blind eye to the irreparable harms of unlawful conduct that reverberate well beyond the warrantless arrests. *See Ramirez Ovando*, 810 F. Supp. 3d at 1237–38. This Court therefore concurs with the other district courts to conclude that a *post hoc* warrant does not permit detention that arose from an unlawful warrantless arrest. *See Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739–40 (D. Minn. 2026) (ordering release where petitioner was arrested and detained without a warrant, and respondents did not obtain a warrant until after 48-hour period had elapsed); *Ramirez Ovando*, 810 F. Supp. 3d at 1226 (holding that *post hoc* warrants "had no legal effect" and could not "fix[]" warrantless arrests that were not supported by a probable cause determination under § 1357(a)(2)).

The Court will order Petitioner released. Release is an appropriate habeas remedy where a petitioner's current detention lacks a "lawful predicate." *Ahmed M.*, 2026 WL 25627, at *3. The record indicates that Respondents failed to obtain a warrant before arresting Petitioner, failed to make a probable cause determination, failed to obtain a warrant within 48 hours, and failed to provide a bond hearing. To permit Respondents to flout these requirements and detain Petitioner by obtaining a warrant at their leisure would render such requirements a dead letter. And by failing to meaningfully address this issue in their response brief, Respondents have waived their arguments in opposition. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits

an issue it does not support with legal authority or argument." (quotation omitted)).  The Petition is respectfully **GRANTED** as to Count Two.

Having granted Petitioner his requested relief as to Count Two, the Court need not reach Petitioner's remaining claims.  Consistent with its usual practice, the Court will order the Parties to submit a Joint Status Report regarding Petitioner's release.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    The Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED** as to Count Two;

(2)    The Clerk of Court is **DIRECTED** to terminate the Department of Homeland Security and the Executive Office for Immigration Review as Respondents in this action;

(3)    Within **48 hours** of this Order, Respondents **SHALL RELEASE** Petitioner from custody; and

(4)    On or before **May 22, 2026**, the Parties shall file a joint status report confirming that Petitioner was released.

DATED:  May 15, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

12